90 So.2d 161

**BROOKLEY MANOR, Inc.**
**v.**
**STATE of Alabama.**

**I Div. 547.**

Supreme Court of Alabama.

Sept. 13, 1956.

Rehearing Denied Nov. 1, 1956.

Leader, Tenenbaum, Perrine & Swedlaw, Birmingham, for appellant.

John Patterson, Atty. Gen., Willard Livingston, H. Grady Tiller and Wm. H. Burton, Asst. Attys. Gen., for appellee.

LAWSON, Justice.

Brookley Manor, Inc., hereafter referred to as the Company, is an Alabama corporation organized primarily to provide housing for rent or sale.

On December 1, 1950, the Company entered into a contract with the Secretary of the Air Force to lease approximately thirty-four acres of land situate in Mobile County to be used for the purpose of erecting, maintaining, and operating thereon a housing project consisting of approximately 175 units, substantially in accordance with the outline, plans and specifications to be approved by the Federal Housing Commissioner.

The leased property is a part of the lands comprising Brookley Air Force Base, title to which was acquired by the United States of America in 1940, and in 1941 the State of Alabama, acting through its Governor, ceded exclusive jurisdiction to the Federal Government over such lands in every respect except that the State retained jurisdiction concurrent with the United States in regard to to service of process.

The lease was made pursuant to authority of the Act of August 5, 1947, sometimes referred to as the Military Leasing Act of 1947, 61 Stat. 774–776, 10 U.S.C.A. § 1270 et seq.; and the Act of August 8, 1949, known as the Wherry Military Housing Act of 1949, which added Title VIII to the National Housing Act, 63 Stat. 570, 12 U.S. C.A. § 1748.

The lease was for seventy-five years at a rental price of $100 per year. It provided, among other things, that "upon the expiration of this lease, or earlier termination, all improvements made upon the leased premises shall remain the property of the Government without compensation, * * *" The Company, the lessee, by the terms of the lease, is required to lease all the units of the housing project to such military and civilian personnel as are designated by the Commanding General of Brookley Air Force Base. However, in the event the Commanding General fails to designate such personnel within a stated period, and upon other specified conditions not here relevant, the Company may lease the units to other persons. The Government is to furnish fire and police protection on a reimbursable basis. The Company has the right to permit public utilities to extend water,

sewer, gas, telephone and electric power lines onto the leased land in order to provide those services. The Company agreed to insure the buildings against fire at its own expense, to permit government inspection of the premises, and to comply with regulations prescribed by the Commanding General of Brookley Air Force Base for military requirements for safety and security purposes consistent with the use of the leased premises for housing. The Company cannot assign the lease without the written approval of the Secretary of the Air Force.

The lease further provides: "That the Lessee shall pay to the proper authority, when and as the same become due and payable, all taxes, assessments, and similar charges which, at any time during the term of this lease, may be taxed, assessed or imposed upon the Government or upon the Lessee with respect to or upon the leased premises." Such provisions of the lease follow substantially the requirements of the Military Leasing Act, supra, which provides in part as follows: "Sec. 6. The lessee's interest, made or created pursuant to the provisions of this Act, shall be made subject to State or local taxation. Any lease of property authorized under the provisions of this Act shall contain a provision that if and to the extent that such property is made taxable by State and local governments by Act of Congress, in such event the terms of such lease shall be renegotiated." 61 Stat. 774–776, 10 U.S.C.A. § 1270d.

Some, if not all, of the preferred stock of the Company is held by the Commissioner of the Federal Housing Administration which, according to Title VIII of the National Housing Act, insured the mortgage on the project. After the signing of the contract and the insurance of the mortgage, the housing project containing 175 units was constructed by the Company on the leased land.

For the tax year 1952, the Company filed with the Tax Assessor of Mobile County what it terms an information return, setting forth its "leasehold interest" in the housing project and claiming it exempt from ad valorem taxes by the State as property of the United States.

The Tax Assessor made an assessment against the Company as follows: "175 dwelling units, 4½ rooms per unit, at $1150.00 per unit, Tax Assessor's value for assessment, $201,250.00." No assessment was made against the so-called "leasehold interest" or against the United States of America. The Board of Equalization of Mobile County sustained the assessment made by the Tax Assessor, overruling the objections interposed by the Company and from the action of the Board of Equalization overruling its objections the Company appealed to the circuit court of Mobile County. § 109, Title 51, Code 1940.

When the cause came on for trial in the circuit court of Mobile County it was agreed by counsel representing the State and the Company that " * * * the only question at issue is a legal question, namely: Whether the improvements built by the Appellant on the property of the United States Government are taxable for Ad Valorem Tax purposes under the laws of the State of Alabama."

In its judgment affirming the assessment made by the Mobile County Board of Equalization, the trial court made the following observation:

"It is sometimes well to state, in addition to what the point of decision is, to also state what it is not. This is not an assessment against the United States or against any land belonging to them, nor against any lease-hold estate therein, but against such right, title and interest in the 175 dwelling units as may be owned by the appellant, as the general and beneficial owner of same, who indisputably has built and is renting same as a private enterprise, in competition with others who build and rent houses. This is not a case for this court to determine whether the state has a lien on the land, but merely for

the court to determine whether the *interest* of appellant in the property assessed, in the agreed statement of facts, is subject to the assessment made."

From the judgment of the circuit court of Mobile County, the Company appealed to this court.

In the case of Offutt Housing Company v. County of Sarpy, 1956, 351 U.S. 253, 76 S.Ct. 814, 819, 100 L.Ed. 1151, the Supreme Court of the United States upheld the right of the State of Nebraska and the County of Sarpy in that state to collect property taxes from a private corporation on its housing project constructed on lands of the United States under a lease similar in all material respects to the lease presently under consideration.

It is our understanding of the opinion in the case just referred to that the Supreme Court of the United States held, in effect, that the tax immunity of the Federal Government from State taxation was not involved in that the provisions of the Military Leasing Act of 1947, supra, and the Wherry Military Housing Act of 1949, supra, when read together show that the Congress intended for the States to be permitted to tax private interests, like those of the petitioner in that case and of the appellant in this case, in housing projects located on lands belonging to the United States of America where such housing projects are constructed, operated and maintained under leases of the kind which the Offutt Housing Company and this appellant entered into with the Secretary of the Air Force.

The Court observed that the enjoyment of the entire worth of the buildings and improvements will be that of the lessee, the private corporation, in view of the fact that the lease is for seventy-five years and the buildings and improvements have an estimated useful life of thirty-five years.

We construe the opinion as holding in effect that while the title may be in the government, the real owner of the housing project as far as state and county taxation is concerned is the private corporation. We quote: "The Government may have 'title,' but only a paper title, and while it retained the controls described in the lease as a regulatory mechanism to prevent the ordinary operation of unbridled economic forces, this does not mean that the value of the buildings and improvements should thereby be partially allocated to it."

This court in the case of Ken Realty Co. v. State, 247 Ala. 610, 25 So.2d 675, 166 A.L.R. 588, reaffirmed the rule prevailing in this state that paper title alone is not always determinative of ownership for tax purposes. See also Ken Realty Co. v. Johnson, 5 Cir., 138 F.2d 809.

In view of the holding of the Supreme Court of the United States in the case to which we have alluded above, we feel that the taxing authorities were correct in holding, in effect that for tax purposes the appellant Company was in fact the owner of the property sought to be taxed. The trial court so adjudged in upholding the tax assessment. It follows that the judgment of the circuit court of Mobile County should be affirmed. It is so ordered.

Affirmed.

LIVINGSTON, C. J., and STAKELY and MERRILL, JJ., concur.