111 So.2d 602

**QUINTARD TERRACE APARTMENTS, INC.**

v.

**STATE of Alabama.**

**3 Div. 824.**

Supreme Court of Alabama.

March 12, 1959.

Rehearing Denied May 14, 1959.

Young, Aird & Young, Anniston, and Markstein & Cooper, Birmingham, for appellant.

John Patterson, Atty. Gen., Willard W. Livingston and Wm. H. Burton, Asst. Attys. Gen., for appellee.

STAKELY, Justice.

The State Department of Revenue made an assessment for franchise taxes under the provisions of § 348, Title 51, Code of 1940, for the year 1956, in the amount of $3,130.48 against Quintard Terrace Apartments, Inc., a corporation (appellant), hereinafter referred to as Quintard. Quintard paid the tax and appealed from the foregoing final assessment to the Circuit Court of Montgomery County, in Equity. Quintard then filed its bill of complaint in accordance with § 140, Title 51, Code of 1940.

The State filed a demurrer and answer to the bill of complaint and the cause was submitted for final decree upon the pleadings and evidence. In its decree the court overruled the demurrer of the State but affirmed the final assessment of the franchise tax made against Quintard. The appeal to this court followed.

The appellant, Quintard, is a corporation organized under the laws of the State of North Carolina. It entered into a contract with the Secretary of the Army whereby it leased approximately 25 acres of land, which is a part of that comprising the Fort McClellan military reservation in Calhoun County, Alabama. The land was leased for the purpose of erecting, maintaining and operating thereon a housing project consisting of approximately 140 units. The lease was made pursuant to authority of the Act of August 5, 1947, sometimes referred to as the Military Leasing Act of 1947.—61 Stat. 774–776, 10 U.S.C.A. § 1270 et seq.* and the Act of August 8, 1949, known as the Wherry Military Housing Act of 1949, which added Title VIII to the National Housing Act. 63 Stat. 570, 12 U.S.C.A. § 1748.

The appellant qualified to do business in Alabama as a foreign corporation on June 8, 1954. Title 51, § 348, Code of 1940, as amended, 1955 Cumulative Pocket Part, reads as follows:

"Every corporation organized under the laws of any other state, nation or territory and doing business in this state, except strictly benevolent, educational or religious corporations, shall pay annually to the state an annual franchise tax of two and one-half ($2.50) dollars on each one thousand dollars ($1,000.00) of the actual amount of capital employed in this state. * * * Provided, that if a corporation has qualified to do business in this state it shall for the purpose of franchise tax prima facie be held to be doing business in the state of Alabama within the meaning of this title."

The foregoing lease was for a period of 75 years. The evidence shows that practically all if not all of the employees of Quintard were residents of Alabama and were in Alabama during the time involved

138

in this case and that the 140 units located on the military reservation were in Calhoun County, Alabama, some five miles north of Anniston on the Anniston-Jacksonville Highway. Quintard maintained an office in said apartment building where the books of the corporation were kept. The evidence further shows that the nerve center and business hub of the corporation was in Calhoun County, Alabama, and it was there that the only business or activities of the corporation were carried on. The rent for the housing units was collected at the local office from the tenants and the monthly rentals were deposited monthly to the credit of Quintard in a bank in Anniston, Alabama. The amounts ranged from $10,000 to $11,000 per month. In addition to depositing the rent money each month to the credit of Quintard in the bank in Anniston, the appellant Quintard also maintained in the name of Friendly Realty Company a deposit in an Anniston bank which averaged approximately $500 at all times to be used in connection with the operation of the apartments. The manager located on the reservation was authorized to write checks on this deposit to defray the current expenses of the apartments. The evidence further shows that the sole and only income of the corporation was derived from the rental of the foregoing apartment units within the State of Alabama.

It is insisted by Quintard that since it carries on its business on lands leased from the United States, the exclusive jurisdiction of such land having been ceded by the State of Alabama to the United States, that it is not doing business within the State of Alabama to such an extent as to be liable for a franchise tax.

There seems to be some conflict in the evidence as to whether the State of Alabama has ceded exclusive jurisdiction over Ft. McClellan to the Federal government. For the purposes of this case we will assume, without deciding, that such exclusive jurisdiction has been so ceded.

The Military Leasing Act hereinabove referred to reads in part as follows:

"Sec. 6. The lessee's interest, made or created pursuant to the provisions of sections 1270-1270b, 1270d shall be made subject to State or local taxation. Any lease of property authorized under the provisions of this Act shall contain a provision that if and to the extent that such property is made taxable by the State and local governments by Act of Congress, in such event the terms of such lease shall be renegotiated."

The Wherry Military Housing Act heretofore referred to reads as follows:

"§ 1748d. Lease of property; terms and conditions Whenever the Secretary of the Army, Navy, or Air Force determines that it is necessary to lease any land held by the United States on or near a military installation to effectuate the purposes of this subchapter, he may lease such land upon such terms and conditions as will, in his opinion, best serve the national interest. The authority conferred by this section shall be in addition to and not in derogation of any other power or authority of the Secretary of the Army, Navy, or Air Force. * * *."

The appellant's lease contains provisions substantially following these statutes, including the following:

"8. That the lessee shall pay to the proper authority, when and as the same become due and payable, all taxes, assessments, and similar charges which at any time during the term of this lease, may be taxed, assessed or imposed upon the Government or upon the lessee with respect to or upon the leased premises. * * *."

In the case of Brookley Manor, Inc. v. State, 265 Ala. 141, 90 So.2d 161, 163, after citing the case of Offutt Housing Co. v. County of Sarpy, 1956, 351 U.S. 253, 76 S.Ct. 814, 819, 100 L.Ed. 1151, in which the

Supreme Court of the United States upheld the right of the State of Nebraska and the County of Sarpy in that state to collect property taxes from a private corporation on its housing project constructed on lands of the United States under a lease similar in all material respects to the lease presently under consideration, this court said:

"It is our understanding of the opinion in the case just referred to that the Supreme Court of the United States held, in effect, that the tax immunity of the Federal Government from State taxation was not involved in that the provisions of the Military Leasing Act of 1947, supra (61 Stat. 774–776, 10 U.S.C.A. § 1270 et seq.), and the Wherry Military Housing Act of 1949, supra (63 Stat. 570, 12 U.S.C.A. § 1748), when read together show that the Congress intended for the States to be permitted to tax private interests, like those of the petitioner in that case and of the appellant in this case, in housing projects located on lands belonging to the United States of America where such housing projects are constructed, operated and maintained under leases of the kind which the Offutt Housing Company and this appellant entered into with the Secretary of the Air Force.

"The Court observed that the enjoyment of the entire worth of the buildings and improvements will be that of the lessee, the private corporation, in view of the fact that the lease is for seventy-five years and the buildings and improvements have an estimated useful life of thirty-five years.

"We construe the opinion as holding in effect that while the title may be in the government, the real owner of the housing project as far as state and county taxation is concerned is in the private corporation. We quote: 'The Government may have "title," but only a paper title, and while it retained the controls described in the lease as a regulatory mechanism to prevent the ordinary operation of unbridled economic forces, this does not mean that the value of the buildings and improvements should thereby be partially allocated to it.'"

It is true that in the foregoing case the court was dealing with an ad valorem assessment on the real estate of the corporation, but we see no difference between an ad valorem tax on the real estate of the corporation and the right to consider the lessee's value of the housing units in determining the amount of capital employed by this foreign corporation in the State of Alabama. The provisions of the lease to which we have referred provide that the lessee shall pay to the proper authority all taxes, assessments and similar charges which at any time during the term of this lease may be taxed, assessed or imposed upon the government or upon the lessee with respect to or upon the leased premises.

The franchise tax here involved is a tax upon the lessee, Quintard Terrace Apartments, Inc., a foreign corporation, and even though it may not be a lien as in the case of ad valorem taxes, the value of the property owned by the lessee should be considered in computing the franchise tax laid upon the appellant for the privilege of doing business in the State of Alabama.

The appellant relies upon the case of O'Pry Heating & Plumbing Co. v. State, 241 Ala. 507, 3 So.2d 316, which was decided in 1941. It is sufficient to say that that case did not consider the federal statutes to which we have referred which were enacted in 1947 and 1949.

We conclude that in estimating the amount of capital employed in the State of Alabama by Quintard Terrace Apartments, Inc., a foreign corporation, the State had the right to consider the value of the lessee's interest in the foregoing lease.

It results that the decree of the lower court is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.