**BEN LOMOND, INC., Appellant,**

v.

**FAIRBANKS NORTH STAR BOROUGH BOARD OF EQUALIZATION, Appellee.**

No. S–2220.

Supreme Court of Alaska.

Aug. 26, 1988.

Kenneth D. Lougee, Hughes, Thorsness, Gantz, Powell & Brundin, Fairbanks, for appellant.

Mark Andrews, Asst. Borough Atty., Eugene P. Hardy, Borough Atty., Fairbanks, for appellee.

## OPINION

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

RABINOWITZ, Justice.

This appeal was filed despite the lack of a final judgment.[1] The appeal is therefore improper; however, we treat it as a petition for review under Appellate Rule 402. *See City of Kenai v. Ferguson,* 732 P.2d 184, 192 n. 16 (Alaska 1987); *Kendall v. State, Div. of Corrections,* 692 P.2d 953, 954 n. 1 (Alaska 1984); *Leege v. Strand,* 384 P.2d 665, 666–67 (Alaska 1963). The petition is limited to the question of whether Ben Lomond, Inc. ("Lomond") has an

---

1. Ben Lomond, Inc. appealed a superior court decision which affirmed the Fairbanks North Star Borough Board of Equalization's conclusion that Lomond had a taxable interest in certain land and buildings on Eielson Air Force Base, but remanded the matter to the Board for recalculation based upon a 23 year lease term rather than the 40 year term previously employed. No final decision on the remanded issue had yet been reached by the superior court when this appeal was filed. *See Cool Homes, Inc. v. Fairbanks North Star Borough,* No. 4FA–87–1093 CI, Slip Op at 2–3 (Superior Court Jan. 5, 1988). Lomond did not file a motion under Alaska R.Civ.P. 54(b) for certification of the superior court's decision as a final judgment on the nonremanded issue.

interest in real property subject to taxation by the Fairbanks North Star Borough ("Borough"). We find this issue appropriate for review "because a controlling question of law is presented on which there is substantial ground for difference of opinion and present review will materially advance the ultimate termination of the litigation." *Hagberg v. Alaska Nat'l Bank*, 585 P.2d 559, 560 (Alaska 1978) (footnote omitted). We hold that Lomond possesses taxable interests in its leasehold of the land on which it built military housing (the Cool Homes Project) and in the buildings themselves.

FACTS.

In April 1984, the United States issued a request for proposals by private developers to build 300 units of housing on Eielson Air Force Base, a federal military enclave. Lomond submitted the successful proposal.

On January 7, 1985, Lomond and the United States executed a "Land Lease of Property on Eielson Air Force Base, Alaska, Military Reservation" ("Land Lease").[2] Under the terms of the Land Lease, Lomond leased "57.81 acres, more or less" for a term of twenty-three years, for which it paid "rental in the amount of One Dollar and No Cents ($1.00) for the entire lease term, the sum and sufficiency of which is hereby acknowledged." Lomond is thus the lessee of federal land under the Land Lease; the United States is the lessor.

Lomond and the United States also apparently executed a "Lease of Project Between the United States of America and Ben Lomond, Inc." ("Project Lease").[3] The Project Lease leased back to the United States "the housing project consisting of the residential buildings, structures, and other improvements constructed on land at Eielson Air Force Base, Alaska, and said underlying lands...." The Project Lease provides a twenty year term to run concurrently with the last twenty years of the Land Lease.[4] Under the Project Lease,

Lomond is the lessor, while the United States became the lessee. The United States agreed to pay to Lomond "an annual rent of $3,600,000.00 ... payable monthly in arrears" as well as "an annual 'Housing Maintenance Rental' of $216,000.00 ... payable monthly in arrears, for maintenance, repair, replacement, and redecoration."

The Land Lease was authorized under 10 U.S.C. § 2667, which provides:

(a) Whenever the Secretary of a military department considers it advantageous to the United States, he may lease to such lessee and upon such terms as he considers will promote the national defense or be in the public interest, real or personal property that is—

(1) under the control of that department;

(2) not for the time needed for public use; and

(3) not excess property, as defined by section 3 of the Federal Property and Administrative Services Act of 1949 (40 U.S.C. 472).

. . . .

(e) The interest of a lessee of property leased under this section may be taxed by State or local governments. A lease under this section shall provide that, if and to the extent that the leased property is later made taxable by State or local governments under an Act of Congress, the lease shall be renegotiated.

The Project Lease was authorized under the Military Construction Authorization Act of 1984, Section 801, codified as 10 U.S.C. § 2828. That Act inaugurated a test program "to determine if leasing is more cost effective to the [United States] than the traditional method of constructing [military] housing with appropriated funds...." While it does not refer specifically to taxation, there is no indication that 10 U.S.C. § 2828 was intended to supersede

---

**2.** The parties also signed a preliminary document, the "Agreement to Lease."

**3.** Both parties argue that this lease was executed and defines the interests of Lomond and the United States, but the copy before the Board

and before this court is neither dated nor executed.

**4.** The first three years of the Land Lease are designated as a construction period.

the provision of 10 U.S.C. § 2667 which provides for taxation of private interests.

Condition 13 of the Land Lease provides: [t]hat the Lessee [Lomond] shall pay to the proper authority, when and as the same become due and payable, all taxes, assessments, and similar charges which, at any time during the terms of this lease, may be taxed, assessed, or imposed, upon the Lessee's interest in the leased premises. In the event any taxes, assessments, or similar charges are imposed, with the consent of Congress upon property owned by the Government and included under this lease (as opposed to the leasehold interest of the Lessee therein), they shall be paid (1) by the Government, in which event this lease shall then be renegotiated to increase the consideration provided above in the amount of such taxes, assessments, or similar charges paid by the United States, or (2) at the option of the Government, by the Lessee.

Lomond is also responsible for any taxes assessed under the Project Lease. Article VII provides, in pertinent part:

Lessor [Lomond] shall pay all taxes, general or special, all public rates, dues, and special assessments of every kind which shall become due and payable or which are to be assessed against or may be levied upon said Premises during the term of this Lease.

The Borough issued a notice of assessment to Lomond for 1986. It valued Lomond's possessory interest in the leased land at $1,551,416 and improvements on the land at $13,855,765 for a total assessed value of $15,407,181.

PROCEEDINGS.

Lomond filed an appeal to the Fairbanks North Star Borough Board of Equalization ("Board"). Lomond argued that it had no taxable interest in property at Eielson Air

Force Base because the land was federal property, and, alternatively, that if it did have an interest in the property, that interest was "so limited by the contractual relationship to the federal government as to be without value for property tax purposes." The Board upheld the assessment against Lomond.

Lomond subsequently appealed to the superior court under AS 29.45.210(d).[5] The superior court upheld the Board's determination of the value of Lomond's property interests for tax purposes. The court remanded the matter, however, to the Board because "the Borough may have assessed the government's reversionary interest in the land on the basis of a 40–year lease, but the land lease term is only for 23 years." Lomond filed a motion for reconsideration; it was denied.

Lomond then filed a notice of appeal to this court, asserting that the Board exceeded statutory and constitutional limits in assessing property taxes against Lomond for the Cool Homes Project. The Board held a hearing on the issue remanded by the superior court, *Cool Homes, Inc. v. Fairbanks North Star Borough*, No. 4FA–87–1093 CI, Slip Op. at 2 (Superior Court Jan. 5, 1988), and again upheld the assessor's findings based upon a forty year lease. Cool Homes, Lomond's subsidiary and successor in interest, appealed to the superior court.[6] In regard to this second appeal, the superior court vacated "the Board's findings … to the extent that they derive from a calculation based on a forty year lease [instead of the actual twenty-three year lease]," and remanded the issue for findings consistent with its opinion.

DISCUSSION.

The only issue we address is whether Lomond has a taxable interest in the land and/or the buildings in the Cool Homes

5. Alaska Statute 29.45.210(d) provides:

An appellant or the assessor may appeal a determination of the board of equalization to the superior court as provided by rules of court applicable to appeals from the decisions of administrative agencies. Appeals are heard on the record established at the hearing before the board of equalization.

6. In this second appeal to the superior court, Lomond also contested the taxation of certain improvements in the 1987 assessment which apparently had not been included in the 1986 assessment. The 1986 assessment was the focus of the earlier appeal and hearing.

Project.[7] This court may substitute its judgment for the Board's and the superior court's in determining the legal question of Lomond's interest. *Noey v. Department of Envtl. Conservation,* 737 P.2d 796, 800 (Alaska 1987); *Kelly v. Zamarello,* 486 P.2d 906, 916 (Alaska 1971).

*The Land.*

Lomond has a twenty-three year leasehold interest in the 57.81 acres on Eielson Air Force Base on which the Cool Homes Project is now situated. Eielson Air Force Base is a federal military reservation, reserved to the United States under Section 11 of the Alaska Statehood Act.

Any property interest of the federal government in the Cool Homes Project—or any other property within a federal reservation—is exempt from taxation by state or local authorities. AS 29.45.030(a)(1);[8] FNSB Ord. 3.08.020(c).[9] However, any private interest in such land is "taxable to the extent of the interest." AS 29.45.030(a)(1). This statutory provision tracks the state constitution: "Private leaseholds, contracts, or interests in land or property owned or held by the United States, the State, or its political subdivisions, shall be taxable to the extent of the interests." Alaska Const. Art. IX, § 5. The federal statute under which the Land Lease was authorized also provides that "[t]he interest of a lessee of property leased under this section may be taxed by State or local governments." 10 U.S.C. § 2667(e). Further, condition 13 of the Land Lease itself distinguishes between the taxation of any "property owned by the Government and included under this lease (as opposed to the leasehold interest of the Lessee [Lomond] therein)...."

*The Buildings.*

Lomond owns the buildings on the leased land. The Agreement to Lease [10] provides that

[i]t is understood by the parties that such Improvements are and will remain the property of the Developer during existence of this Agreement to Lease. Upon completion of construction of such Improvements and their acceptance for use by the Government, the Government and Developer shall enter into the Lease of Project....

The Project Lease provides that the Government will lease from Lomond "the residential buildings, structures, and other improvements constructed on [the] land ... and said underlying lands...." The Project Lease further provides that "upon expiration of this Lease, the Lessee [Government] shall have the first right of purchasing the Premises for the same price which the Lessor [Lomond] would be willing to sell to any other person, which shall not exceed the fair market value of the improvements erected on the land." Unless it owned the buildings Lomond would not be able to lease or sell them to the Government, nor would the Government be willing to purchase them from Lomond.

ANALYSIS.

Lomond argues that the Land Lease and Project Lease, considered together, deprive Lomond of any of "the traditional rights of property ownership." Lomond contends that its limited interest in the Cool Homes Project is not subject to the Borough's real property tax.[11] Our analysis begins with

---

7. We do not address the validity of the "replacement cost" method of evaluation used by the Borough in assessing taxes against Lomond's interests in the buildings. Lomond is free to challenge this method of evaluation on remand.

8. Alaska Statute 29.45.030(a)(1) provides:
    (a) The following property is exempt from general taxation:
       (1) municipal, state, or federally owned property, except that a private leasehold, contract, or other interest in the property is taxable to the extent of the interest....

9. Fairbanks North Star Borough Ordinance 3.08.020 provides:

The following property is exempt from general taxation:
....
C. All property belonging to the United States of America....

10. *See supra* note 2.

11. In *Sisters of Providence v. Municipality of Anchorage,* 672 P.2d 446, 448 (Alaska 1983) we noted the general rule is that a tax authority may penetrate the form of a transaction to determine its substance but a taxpayer may not. We further observed that "[t]he rule which precludes a taxpayer from challenging the form of

consideration of similar cases from other jurisdictions.

In *Offutt Housing Co. v. County of Sarpy,* 351 U.S. 253, 76 S.Ct. 814, 100 L.Ed. 1151 (1956) the United States Supreme Court addressed a situation similar to the one now before this court. In 1951, Offutt Housing Co. entered into a lease with the Secretary of the Air Force to build a housing project on Offutt Air Force Base in Nebraska. The lease was for 75 years, at an annual rent of $100. The lease also provided that title to the buildings constructed on the land would be in the government, and that the commanding officer of the base would designate the persons to whom Offutt Housing Co. would rent apartments in the buildings. The county assessor for Sarpy County assessed personal property taxes of $825,685 against Offutt Housing Co. in 1952 for the improvements on the land. The Supreme Court determined that under the Military Leasing Act of 1947, 10 U.S.C. § 1270—the predecessor to the current 10 U.S.C. § 2667—and the Wherry Military Housing Act of 1949, Congress consented to the taxation of the lessee's interest in the project. *Id.* 351 U.S. at 260–61, 76 S.Ct. at 819, 100 L.Ed. at 1159.

Having determined that taxation by the county was permissible, the Court examined the extent of the lessee's interest. The Court noted that "[l]abeling the Government as the 'owner' does not foreclose us from ascertaining the nature of the real interests created...." *Id.* at 261, 76 S.Ct. at 819, 100 L.Ed. at 1159–60. Noting the useful life of the buildings was 35 years and the lease lasted 75 years, the Court concluded that "[t]he enjoyment of the entire worth of the buildings and improvements will therefore be [Offutt Housing Co.'s]." *Id.* at 261, 76 S.Ct. at 819, 100 L.Ed. at 1160. The Court rejected Offutt Housing Co.'s argument that the federal government retained a substantial interest in the buildings and improvements "since [it] prescribed the maximum rents and determined the occupants, had voting interests in [Offutt Housing Co.], provided services, and took the financial risks of insuring the project." *Id.* The government's title, the Court determined, was "only a paper title," *id.,* and even though it retained some control "as a regulatory mechanism to prevent the ordinary operation of unbridled economic forces, this does not mean that the value of the buildings and improvements should thereby be partially allocated to it." *Id.*

The Court therefore affirmed the Nebraska Supreme Court's decision that Offutt Housing Co.'s interest could be taxed as personal property under Sarpy County's personal property tax statute. *Id.* at 262, 76 S.Ct. at 820, 100 L.Ed. at 1160. In a footnote, the Court also commented on installed appliances that were taxed:

> To the extent that the estimated useful life of any of these items extends beyond the term of the lease, the value attributable to such period must be excluded from the tax, since it represents the Government's ownership interest.

*Id.,* n. 1.

The reasoning of *Offutt* has been followed in the following cases: *Ft. Dix Apartments Corp. v. Borough of Wrightstown,* 225 F.2d 473 (3d Cir.1955) (leasehold interests in United States land leased for construction of housing near military facility taxable under local real estate tax statute); *Quintard Terrace Apartments, Inc. v. State,* 269 Ala. 136, 111 So.2d 602 (1959) (North Carolina corporation liable for franchise tax for doing business in state although all land on which it did business located on military base; "We see no difference between a tax on the real estate of a corporation and the right to consider the lessee's value of the housing units in determining the amount of capital employed by this foreign corporation in the State...."); *Brookley Manor, Inc. v. State,* 265 Ala. 141, 90 So.2d 161 (1956) (buildings constructed on land leased from Air Force

a transaction has exceptions, as where the transaction was entered into in ignorance, or the form was either not wanted or not controlled by the taxpayer...." *Id.* at 449 (footnote omitted).

In the case at bar Lomond has not demonstrated the applicability of any exception to the general rule.

subject to ad valorem tax); *Gay v. Jemison,* 52 So.2d 137 (Fla.1951) (upholding state revenue tax levied on materials to be used in constructing military housing project); *Meade Heights, Inc. v. State Tax Comm'n,* 202 Md. 20, 95 A.2d 280 (App. 1953) (leasehold interest in buildings on U.S. Army base taxable under real estate tax statute); *State v. Personnel Housing, Inc.,* 300 S.W.2d 506 (Mo.1957) (interest of private corporation in military housing on land leased from United States subject to local taxation); *Bragg Investment Co. v. Cumberland County,* 245 N.C. 492, 96 S.E. 2d 341 (1957) (leasehold rights in land on military reservation are chattel real, therefore subject to ad valorem tax as statutorily defined "intangible personal property").[12]

 Adopting the approach taken in the cases cited above, we conclude that Lomond's leasehold interest as well as its interest in the buildings are subject to taxation. Under 10 U.S.C. § 2667, Congress has consented to taxation of Lomond's interest in real property on Eielson Air Force Base.[13]

█ Taxation of interests in real property is determined by local statutes, in this case by Fairbanks North Star Borough ordinances. Lomond argues that, if it does have an interest in the Cool Homes Project, its interest is not a real property interest and therefore cannot be taxed as real property. The applicable ordinance, FNSB Ord. 3.08.010(D), provides otherwise:

D. "Real property" includes:

1. Land and all buildings, structures, improvements, and fixtures thereon, and appurtenances thereto;

. . . .

3. Leases and possessory interests in the above.

The "buildings, structures, [and] improvements" built on the leased land fit squarely

within section (D)(1); Lomond's leasehold of the land falls under (D)(3).

CONCLUSION.

Lomond's twenty-three year leasehold interest in land at Eielson Air Force Base and its twenty year interest in the improvements it constructed upon the land are both taxable interests under the Borough's real property taxation statutes. We therefore AFFIRM the superior court's decision upholding the Board's assessment of taxes against Lomond's interests in the subject properties.

---

12. Two cases applied the same analysis to conclude that the lessee's interest was not taxable because New York did not tax personal property. *United States v. Dughi,* 180 F. Supp. 118 (S.D.N.Y.1960); *United States v. Dally,* 165 F.Supp. 194 (S.D.N.Y.1958).

13. We have carefully considered each of the arguments Lomond makes regarding the nontaxable status of its interests in the subject property, and find them lacking in merit. We conclude that none of Lomond's arguments significantly distinguishes the circumstances of this case from those in *Offutt,* its predecessors, and progeny.