**NORTH STAR ALASKA HOUSING CORPORATION, an Alaska corporation, Appellant,**

v.

**FAIRBANKS NORTH STAR BOROUGH BOARD OF EQUALIZATION, Appellee.**

No. S–4568.

Supreme Court of Alaska.

Jan. 15, 1993.

John Spencer Stewart and Erin Marston, Stafford Frey Cooper & Stewart, Portland, OR, for appellant.

Mark Andrews, Acting Borough Atty., Fairbanks North Star Borough, Fairbanks, for appellee.

Before MOORE, C.J., and RABINOWITZ, BURKE, MATTHEWS and COMPTON, JJ.

## OPINION

COMPTON, Justice.

The conflict between North Star Alaska Housing Corporation (North Star) and the Fairbanks North Star Borough (FNSB) regarding the valuation of North Star's housing project at Fort Wainwright again comes before this court. This time North Star appeals its 1988 tax assessment. We affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The background facts of this case are noted in *North Star Alaska Housing*

*Corp. v. Fairbanks North Star Borough Bd. of Equalization,* (*North Star I*), 778 P.2d 1140, 1141–42 (Alaska 1989). In short, North Star leased land from the federal government at Fort Wainwright where it constructed housing facilities which it currently operates. The federal government rents this housing from North Star. *Id.* North Star is taxed on its interest in this property. *Id.* at 1143.

Previously North Star challenged its property tax assessments for 1987 and 1989. *North Star I,* 778 P.2d 1140 (challenging the 1987 assessment); *North Star Alaska Housing Corp. v. Fairbanks North Star Borough Bd. of Equalization,* (*North Star II*), Mem. Op. & J. No. 573 (Alaska, October 9, 1991) (challenging the 1989 assessment). This case involves North Star's 1988 tax assessment.

The FNSB assessor used a replacement cost method to value the property. Applying that method, accumulated depreciation is subtracted from computer generated replacement costs. The resulting value may then be reduced further by an economic obsolescence factor which reflects the impact of supply and demand relationships in the relevant market. The economic obsolescence factor will vary with type of property, its location and desirability, and the condition of the market. Because the rents North Star received were market rents, and because its net operating income exceeded its adjusted replacement cost, an economic obsolescence reduction was not applied in determining the 1988 valuation.

North Star appealed FNSB's tax assessment to the Board of Equalization (Board), which affirmed the assessment. Pursuant to AS 22.10.020(d) and Appellate Rule 601(a), North Star appealed that determination to the superior court. It ruled that the valuation system used by the assessor was not fundamentally wrong. However, the superior court remanded the 1988 assessment on the grounds that 1) the Board

erred by not addressing the issue of whether the economic obsolescence factor was applied unequally with respect to other properties, and 2) the Board erred by relying at least in part on an income approach to valuation even though the assessor did not use it.

The Board held a special hearing to decide the issues remanded by the superior court. The Board ruled that economic obsolescence did not apply to North Star's property because it was "isolated from the factors which call for economic obsolescence in the Fairbanks market, due to the quality of the tenant ... and the length of the lease." The Board deleted any reference to the income approach in its findings.

North Star appealed the Board's new findings to the superior court, which affirmed the Board's decision. North Star appeals, claiming that economic obsolescence reductions were not applied equally to all Fairbanks property valuations.[1]

## II. DISCUSSION

### A. Standard of Review

■■■■ The question whether North Star was treated equally by FNSB is ultimately a determination for this court to make. This is a legal question to which this court substitutes its judgment for that of the Board. *Ben Lomond, Inc. v. Fairbanks North Star Borough Bd. of Equalization,* 760 P.2d 508, 511 (Alaska 1988).[2] The Board based its affirmance of the assessor's determination on the factual finding that North Star's property was isolated from the market forces which are reflected in an economic obsolescence reduction. This is a factual determination involving agency expertise. This court will uphold such findings as long as a reasonable basis for them exists. *North Star I,* 778 P.2d at 1144 n. 7. In this case, the factual finding of market isolation is dispositive because, if sustainable, it provides a basis for the

---

1. North Star does not argue that the method is unsound, only that it did not receive the benefit of the method its property valuation would have arguably produced.

2. This court will independently review the merits of an administrative determination. No deference is given to the superior court's decision when that court acts as an intermediate court of appeal. *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.,* 746 P.2d 896, 903 (Alaska 1987).

North Star property to be treated differently.

North Star's appeal focuses on the adequacy of the evidence upon which the Board's affirmance of the tax assessment rests. North Star contends that it was not treated equally with other property owners in FNSB. FNSB did not apply an economic obsolescence reduction to North Star's property. However, it did apply the reduction to other properties which, based on the criteria enunciated by the FNSB assessor at the hearing, were similarly situated. North Star's argument is that a reasonable basis for disallowing an economic obsolescence reduction does not exist because 1) the evidence does not support the finding that the North Star property was isolated from the market as compared to other properties, and 2) necessary supporting evidence was not before the Board because it was destroyed by FNSB.

### B. Isolation from Economic Obsolescence Factors

■ North Star contends that there was no reasonable basis for the conclusion that economic obsolescence does not apply to its property. North Star argues that several other properties with high quality tenants and long term leases were allowed an economic obsolescence reduction. These properties are the Key Bank Center, the Borough Administration Building, the Tanana Clinic Building, the Alliance Bank Building and the Denali State Bank Building.

3. All of the identified properties have long term leases (in excess of five years) for some portion of the buildings with major tenants, primarily banks, FNSB and the State of Alaska.

4. Although the Denali State Bank Building also had a one hundred percent occupancy rate, the entire building did not have high quality tenants, and many of the leases were expiring soon and were not expected to be renewed. The entire FNSB Administration Building, however, was leased to FNSB.

5. This is a sound conclusion without considering the length of the lease. North Star contends that the length of the lease is not relevant and was improperly relied upon by the Board because economic obsolescence is supposed to reflect factors operating "external" to the lease, not the "internal" terms of the lease.

The Board argues that its determinations are supported by the record notwithstanding conflicting expert testimony. It contends that the only comparable property in FNSB is the Cool Homes military housing facility on Eielson Air Force Base and the Dura Corporation military housing facility. The Board therefore asserts that the properties identified by North Star as similar to it are all distinguishable.

Although there are similarities between the Fort Wainwright property and the properties identified by North Star,[3] there are also obvious differences which support the finding that the Fort Wainwright property was isolated from the market. According to the terms of the lease, the Fort Wainwright project enjoys one hundred percent occupancy from its high quality tenant.[4] The Fort Wainwright property is the only property which was financed and designed specifically for its high quality tenant. *North Star I,* 778 P.2d at 1141–42. Since the Fort Wainwright property is devoted to military use, it will not be subject to value fluctuations from market forces such as unemployment and wage lowering. Further, the Fort Wainwright property will not have to compete in the civilian rental market and be subject to the resulting economic downturns unless the United States Congress fails to appropriate money for the project. There is a reasonable basis to support the finding that Fort Wainwright was isolated from the forces for which the economic obsolescence reduction account.[5]

The length of the lease was determinative in distinguishing the Fort Wainwright property from the Borough Administration Building. FNSB admitted that it also considered the administration building "isolated from the market." However, the administration building was considered vulnerable to economic obsolescence because just four years remained on its lease.

Even if there is some impropriety in considering the length of the lease in an analysis of economic obsolescence, it would only demonstrate that the North Star property might have been treated unequally from the Borough Administration Building, but not from any other property. Other properties with single, stable, nonmilitary tenants and long term leases were also denied reductions including Fred Meyer, the Federal Building, and several Mapco stations.

North Star has failed to show the denial of an obsolescence reduction was unsupportable. North Star has the burden to prove by a preponderance of the evidence unequal valuation based on proven facts.[6] Hence North Star failed to show that it was treated unequally to others whose property was also not affected by market forces.[7]

### C. Unavailability of Evidence

North Star contends that a reasonable basis can not be found to exist for the Board's decision because FNSB destroyed evidence crucial to justifying that decision. North Star argues that an analysis of economic rents was necessary for a determination of isolation from the market, and that the Board needed this information to check whether FNSB's determination was sound. FNSB admitted that it only kept current data on market conditions and the 1988 data on which it based its determination was not available. North Star's expert was unable to establish whether FNSB's method of setting the economic obsolescence reduction was applied equally or correctly.

■ North Star contends that it is "entitled to proof of equal treatment." But the

6. FNSB Ordinance 3.24.015(D) provides:
   The appellant bears the burden of proof. The only grounds for adjustment of assessment are proof by preponderance of the evidence of unequal, excessive, improper or under valuation based on facts that are stated in a valid written appeal or proven at the appeal hearing.

7. North Star also claims FNSB's procedure of comparing the income value with the replacement cost value led to the denial of an obsolescence reduction for Fort Wainwright. North Star contends other comparable property also had a higher value from the income approach and yet still received the obsolescence reduction.
   However, we note that the Board deleted all references to the income approach in it's findings. Also, the comparison was made only after the assessor had determined the property was isolated. The procedure of comparing replacement cost and income value was only used as a double check to validate the conclusion that the property was not affected by market forces.

8. North Star reads AS 29.45.210(b) as imposing the burden of *pleading* and *persuasion* on the

burden of proof in contesting a tax assessment is on the taxpayer. AS 29.45.210(b); FNSB Ordinance 3.24.015(D). North Star mistakenly believes that once it has raised a contention about the propriety of the assessment, FNSB must then come forward with evidence to substantiate the assessment.[8]

North Star's argument is unpersuasive. FNSB's assessment is not vulnerable because of the unavailability of the empirical data. As discussed above, the evidence adduced by FNSB at the hearing provides a reasonable basis to support the finding that the North Star property was isolated from the market. North Star did not present persuasive evidence that its Fort Wainwright property was subject to market adjustments like the properties it identified. Thus, there is no basis to conclude the Board treated North Star unequally. The Board's decision may be affirmed, based on the testimony at the hearing describing the assessment methods.[9]

### III. CONCLUSION

The Board had a reasonable basis for finding that North Star's Fort Wainwright property was isolated from the market.

taxpayer but as leaving the burden of *production* of evidence substantiating the assessment with the borough. *See Thomas v. Anchorage Telephone Utility,* 741 P.2d 618, 622–23 (Alaska 1987) (discussing the shifting burdens in an employment discrimination case).
   North Star argues that FNSB had a duty to produce the economic obsolescence workups it performed on the comparable properties because on remand of the original appeal, Judge Mary E. Greene directed the Board to enter findings on whether the same procedures were followed for comparable properties. *North Star Alaska Housing Corp. v. Fairbanks North Star Borough Bd. of Equalization,* Case No. 4FA–88–1031 Ci. (Alaska Super., October 31, 1989).
   We conclude that the Board's finding that the Fort Wainwright property was isolated from the market adequately addresses the issue of relative economic obsolescence.

9. The Board also contends that North Star was not harmed by the loss of the data. The Board refers to the superior court's affirmance, which noted that North Star did not contend that its expert was obstructed from or could not otherwise have produced data of market rents and isolation from the market in 1988.

North Star has failed to show the property was treated unequally when its taxable value was not reduced for economic obsolescence.

AFFIRMED.