**TWENTIETH CENTURY INVESTMENT
CO., Inc., an Alaskan corporation,
Appellant,**

v.

**CITY OF JUNEAU, Alaska, an Alaskan
municipal corporation, Appellee.**

No. 42.

Supreme Court of Alaska.

Feb. 22, 1961.

Ernest Bailey, Stump & Bailey, Ketchikan, George J. Toulouse, Jr., and Wettrick, Flood, O'Brien, Toulouse & Lirhus, Seattle, for appellant.

F. O. Eastaugh, Robertson, Monagle, Eastaugh & Annis, Juneau, for appellee.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

DIMOND, Justice.

■ The Twentieth Century Investment Company sued the City of Juneau to recover property taxes paid under protest for the years 1955, 1956 and 1957. It was contended (1) that the assessments were so lacking in uniformity as to deny the Company the equal protection of the laws; and (2) that the tax assessments were so grossly in excess of actual value of the property taxed as to constitute a constructive fraud and a taking of the taxpayer's property without due process of law. The district court found that the property involved was properly assessed at its true value within reasonable limits, and judgment was entered for the City. This appeal followed.

The property involved is the Twentieth Century Building, a steel and concrete structure containing a moving picture theater, some stores and offices, and a number of apartments. It was constructed in 1940 at an approximate cost of $237,300, but was valued for tax purposes that year at less than $75,000.

Real property in the City was revalued in 1945 using a method which contemplated the actual replacement cost of a structure less depreciation. Replacement cost was estimated by measuring the cubic capacity of a building and multiplying this by a certain rate per cubic foot depending upon the type of construction involved. The Twentieth Century Building was found to contain 400,000 cubic feet and the rate applied was fifty cents a cubic foot, resulting in a gross assessment value of $200,000. A twenty per cent depreciation factor was allowed, and the value was thus reduced to $160,000. Then, after a protest from the taxpayer, the City's Board of Equalization further reduced the assessment value to $89,000. This remained unchanged for the next nine years.

In 1955 the City directed its assessor to reappraise all property in the City in order to remove alleged disparities in property valuations. The cost method was utilized by the assessor for buildings—i. e., reconstruction cost in 1955 less depreciation to a maximum of fifty per cent depending upon the type of construction, age, and condition of the building.

The assessor's first valuation of the Twentieth Century Building was not based solely on the cost method. In appraising the theater area of this building, he applied what was called a "modified capitalization of income technique", which took into consideration anticipated revenues based on theater admission prices and seating capacity. The result of this was that the theater area was valued at $103,676, and the remainder of the building (utilizing the cost method), at $261,655—for a total assessed value of $365,331.

By letter to the assessor the Company protested this valuation as being excessive. The assessor responded by stating that he had rescinded the original appraisal and had revalued the building. He abandoned the modified capitalization of income method, and utilizing the cost less depreciation approach, arrived at a total building valuation of $681,500, with the theater area being assessed at $347,800. He gave as his reason for the change that the previous method of valuing the theater area was a controversial issue, that it constituted a deviation from the established building valuation formula based on reconstruction cost less depreciation, and that it constituted an usurpation of the prerogative of the Board of Equalization. He also pointed out in the answer to the Company's objections as to excess valuation that the assessment of the building prior to 1954 had been based on an estimate that the building contained 400,000 cubic feet, whereas in fact it measured 561,593 cubic feet, and that as a result the Company had experienced a tax

saving and the city a tax loss, since 1945, of over $7,000.

The Company applied for relief to the City's Board of Equalization, and it reduced the assessed value of the building to $603,200. This was final. In 1957 the Company's protests again were heard by the Board, but no further reduction was allowed.

### 1. *Uniformity*

The Company argues that the tax valuation placed on its property violates the uniformity requirements of the Alaska Organic Act[1], an act of the Territorial Legislature empowering cities to assess, levy and collect property taxes[2], and the applicable taxing ordinance of the City of Juneau.[3]

It bases this argument on a comparison between the Twentieth Century Building theater area and that portion of the First National Bank Building containing the Capitol Theater, the Company's sole competitor in Juneau. The Twentieth Century Theater, containing slightly in excess of 339,000 cubic feet, was assigned a reconstruction cost rate of $1.35 a cubic foot. Twenty-five per cent depreciation was allowed, and the net assessed value was in excess of $347,000. The Capitol Theater contained 126,714 cubic feet, and the rate used was $1.08 a cubic foot. Fifty per cent

depreciation was allowed, resulting in a net assessed valuation of $68,425. The Company contends that factors such as respective seating capacity (600 for the Capitol and 1,000 for the Twentieth Century), cost of operation, and average gross income ought to have been considered by the assessor, and that if they had been, that from the standpoint of actual value the two theaters would be found to be identical and therefore ought to have been accorded equal and uniform treatment. It is thus proof of an unlawful discrimination, the Company asserts, to assess its theater area in an amount approximately five hundred per cent higher than that of its competitor.

■■ It has been determined that the uniformity clause of the Organic Act required the same measure of uniformity and equality that is required by the equal protection clause of the Fourteenth Amendment as applied to state taxing laws.[4] The equal protection clause does not prohibit inequality in taxation which is not shown to be the result of an intentional or systematic undervaluation of some but not all of the taxed property in a single class.[5]

Assuming that the Company is correct in contending that the two theaters are subjects of the same class for taxation purposes, it has not sustained the burden[6] of

1. Section 9 of the Organic Act of the Territory of Alaska, 37 Stat. 514 (1912), as amended by the Act of June 3, 1948, ch. 396, 62 Stat. 302 [A.C.L.A. § 48–1–1 (1949)] provided that "all taxes shall be uniform upon the same class of subjects and shall be levied and collected under general laws, and the assessments shall be according to the true and full value thereof * * *."

2. Section 16–1–112 A.C.L.A.1949, which authorized municipal corporations in Alaska to annually assess and levy taxes upon all real and personal property within the corporation, required that "all assessments shall be equal and uniform and based upon the actual value of the property assessed * * *." This section was amended in 1957 (S.L.A.1957, ch. 174, § 3), but the words quoted were not modified.

3. Ordinance No. 329 of the City of Juneau requires all assessments to "be equal and

uniform and based upon the actual value of the property assessed", and makes it the duty of the Board of Equalization of the City to "raise or lower the evaluation of any property * * * which it may deem not equally or uniformly assessed, or not assessed at its actual value * * *."

4. Alaska Steamship Co. v. Mullaney, 9 Cir., 1950, 180 F.2d 805, 817, 12 Alaska 594, 619; Hess v. Mullancy, 9 Cir., 1954, 213 F.2d 635, 639, 15 Alaska 40, 48, certiorari denied 1954, Hess v. Dewey, 348 U.S. 836, 75 S.Ct. 50, 99 L. Ed. 659.

5. Charleston Federal Savings & Loan Ass'n v. Alderson, 1945, 324 U.S. 182, 190–191, 65 S.Ct. 624, 89 L.Ed. 857, 864.

6. Id., 324 U.S. at page 191, 65 S.Ct. at page 630, 89 L.Ed. at page 864.

proving that the method of assessment and valuation employed was adopted with the purpose of taxing the Twentieth Century Theater at more than its true value or the Capitol Theater at less than its true value. In fact, the exact opposite is shown. Not only was the general mode of assessment the same for each property, i. e., reconstruction cost less depreciation, but the assessor testified that in conducting the overall 1955 revaluation of the City he was striving for one hundred per cent full and true value. Thus, there is evidence to support a finding that the assessor's method of valuation was adopted for the purpose of arriving at the actual or true value of each property.

Nor is it proof of unlawful discrimination that the assessor assigned a lower reconstruction cost rate and a higher rate of depreciation to the Capitol Theater. This action was justified because of obvious and substantial differences between the two buildings. The Twentieth Century Building, constructed in 1940, was a composite of Class A and Class B construction which required the use of steel reinforced concrete throughout. The First National Bank Building, constructed in 1916, was of Class C construction, which called for reinforced concrete walls, but wooden floors, stairways and roof.

These are obvious distinctions, sufficient to warrant the difference in treatment accorded by the assessor, and to nullify the charge that his actions were arbitrary and resulted in a lack of uniformity. The equal protection clause does not compel the adoption of an iron rule of equal taxation; it does not forbid differences in tax burdens founded upon substantial and reasonable differences between the objects taxed.[7] The two buildings are so dissimilar in size, age and basic construction, that it would be entirely reasonable for the assessor to use different factors in computing reconstruction cost and depreciation, and thus achieve substantial equality and fair equivalence—important considerations in determining the presence or absence of arbitrary discrimination.[8] The Company did not carry its burden of showing the lack of a conceivable basis that would sustain the different valuations of the two buildings.[9]

2. *Excessive Valuation.*

Through its expert witness the Company admitted that the Twentieth Century Building had been assessed and properly depreciated in all respects, with the exception of the theater area. With regard to this portion of the building, the Company contends that the assessed valuation is so far in excess of actual or full and true value as to amount to a confiscation of its property.

The Company has no quarrel with the assessor's estimated reconstruction cost of the theater area as such. But it does argue vigorously that if the cost approach is to be used as a guide to value, the straight line twenty-five per cent physical depreciation allowed by the assessor is unrealistic and totally inadequate. The Company points to the fact that a theater is necessarily large in area and in volume, with an exceptionally high ceiling. It argues that size is not truly representative of actual value, because the theater business is a sick industry on account of the increased competition of television, and that this has caused approximately four hundred of the total one thousand seats in the theater to have no economic value. Thus, it contends that property of this type can be fairly valued only on its capacity to produce income, and that there must be taken into consideration not only physical depreciation but also what the Company refers to as "functional obsolescence", measured by an annual loss in economic return which a theater of this

7. State Board of Tax Commissioners of Indiana v. Jackson, 1931, 283 U.S. 527, 537, 51 S.Ct. 540, 75 L.Ed. 1248, 1256.

8. Concordia Fire Insurance Co. v. People of State of Illinois, 1934, 292 U.S. 535, 547, 54 S.Ct. 830, 78 L.Ed. 1411, 1419.

9. Madden v. Commonwealth of Kentucky, 1940, 309 U.S. 83, 88, 60 S.Ct. 406, 84 L.Ed. 590, 593; Concordia Fire Insurance Co. v. People of State of Illinois, supra note 8.

size ought to produce but does not. The Company's expert witness, in computing functional obsolescence, arrived at a figure of approximately $293,000 which, when added to the amount of physical depreciation allowed and then subtracted from the estimated cost of reconstruction, resulted in a net value of the theater of approximately $48,000.

This witness arrived at the same result by also computing the value of the theater on the basis of a capitalization of income. It was his contention that since a commercial building like a theater is constructed for the purpose of deriving income, the only fair method of ascertaining its value is to determine its true worth to the owner by analyzing the flow of the income stream and capitalizing the income. Using this approach, he again arrived at a net theater valuation of approximately $48,000.

The City Assessor's valuation of this portion of the building, allowing a twenty-five per cent straight line depreciation and a lower reconstruction rate than that used for the rest of the building on account of the high ceiling in the theater, was in excess of $347,000. The Company asserts that this so far exceeds the theater's true economic worth, which it contends is equivalent to true and full value, that to permit the assessment to stand will offend the requirements of due process.

■ The valuation and assessment of property for taxes does not contravene the due process clause of the Fourteenth Amendment unless it is plainly demonstrated that there is involved, not the exercise of the taxing power, but the exertion of a different and forbidden power, such as the confiscation of property.[10] Such a demonstration is not made simply by showing overvaluation; there must be something which, in legal effect, is equivalent to an intention or fraudulent purpose to place an excessive valuation on property, and thus violate fundamental principles that safeguard the taxpayer's property rights.[11]

Invalidity of assessment is not shown by the city's refusal to adopt the Company's proposed method of valuation. Admittedly, the capitalization of income with respect to a commercial property may fairly reflect its value to the owner at the time the assessment is made; and in the circumstances of this case—where television was making inroads on the theater revenues—it would certainly have meant a tax saving for the Company. But the City's position cannot be ignored. When the Company appealed to the Board of Equalization in 1956 and again in 1957, it based its claim for tax relief on what were characterized by a Board member as "skeleton statements" showing costs and revenues from the operation of the theater. Reasonably, the Board would not have been expected to rely solely on such statements and representations by the Company and then adopt the capitalization of income technique to arrive at true value. It would have been necessary to first verify the amounts stated as income and expenses, and to determine whether fair allocations of management fees and other costs had been made among the Company's various business enterprises in the City of Juneau. This is indicated from a finding made by the court below that there had been a duplication and misdirection of costs which compelled the court to reach the conclusion that no efficacy could be accorded the net income figure submitted by the Company.

The record discloses that the Board felt it could not utilize the Company's proposed method of valuation without conducting a complete audit of the Company's business enterprise. Furthermore, the Board may well have felt that if it adopted the Company's theory of valuation on the basis of net earnings, which would have been a de-

10. A. Magnano Co. v. Hamilton, 1934, 292 U.S. 40, 44-45, 54 S.Ct. 599, 78 L. Ed. 1109, 1114.

11. Great Northern Ry. Co. v. Weeks, 1936, 297 U.S. 135, 139, 56 S.Ct. 426, 80 L. Ed. 532, 536. And see Nashville, Chattanooga, & St. Louis Ry. v. Browning, 1940, 310 U.S. 362, 370-371, 60 S.Ct. 968, 84 L.Ed. 1254, 1258-1259.

parture from the established method of computing value on the cost basis, it would be compelled to give the same consideration to other taxpayers owning commercial properties. All of this would undoubtedly have resulted in an increased financial burden to the City and delays in the collection of taxes; and in the case of a business property not producing income, in an increased share of the burden of government being imposed on other taxpayers.

These considerations serve to negate the Company's charge that it was the victim of arbitrary treatment and that there was a fraudulent purpose behind the actions of the assessor and the Board of Equalization. Although the income from property may be a legitimate factor to consider in fixing value for tax purposes, it is not the sole standard to apply.[12] The City was not bound by any particular formula, rule or method, either by statute[13] or otherwise.[14] Its choice of one recognized method of valuation over another was simply the exercise of a discretion committed to it by law. Whether or not it exercised a wise judgment is not our concern. This court has nothing to do with complaints of that nature. It will not substitute its judgment for the judgment of those upon whom the law confers the authority and duty to assess and levy taxes. This court is concerned with nothing less than fraud or the clear adoption of a fundamentally wrong principle of valuation.[15] Neither has been shown here. The actions of the assessor and the Board of Equalization are entirely compatible with a sincere effort to adopt valuations not relatively unjust or unequal; their determinations have not transgressed the bounds of honest judgment.[16]

The judgment of the district court is affirmed.

12. State of Minnesota v. Federal Reserve Bank of Minneapolis, D.C.D.Minn.1938, 25 F.Supp. 14, 19; Dexter Horton Building Corp. v. King County, 1941, 10 Wash. 2d 186, 116 P.2d 507, 520; Aetna Life Insurance Co. v. City of Newark, 1952, 10 N.J. 99, 89 A.2d 385, 388; Bellingham Community Hotel, Inc. v. Whatcom County, 1942, 12 Wash.2d 237, 121 P.2d 335, 339; Ketchikan Packing Co. v. City of Ketchikan, D.C.D.Alaska 1958, 167 F. Supp. 846, 853.

13. Section 16-1-112 A.C.L.A.1949 authorized the City Council to fix "the mode and manner of assessment" of property taxes.

14. Great Northern Ry. Co. v. Weeks, supra note 11, 297 U.S. at page 139, 56 S.Ct. at page 428, 80 L.Ed. at page 536.

15. Chicago, Burlington & Quincy Ry. Co. v. Babcock, 1907, 204 U.S. 585, 596–598, 27 S.Ct. 326, 51 L.Ed. 636, 640–641. See also A. Magnano Co. v. Hamilton, supra note 10, 292 U.S. at page 45, 54 S. Ct. at page 601, 78 L.Ed. at pages 1114–1115.

16. See 22 Charlotte, Inc. v. City of Detroit, 1940, 294 Mich. 275, 293 N.W. 647, 651–652.