(No. 41736.—▮▮▮▮▮▮▮▮▮)

THE PEOPLE *ex rel.* Edmund J. Kucharski, County Collector, Appellee, *vs.* TRANS WORLD AIRLINES, INC., Appellant.

*Opinion filed September 26, 1969.*

MADIGAN AND THORSON, and CARROLL, PAXTON AND BLOMQUIST, both of Chicago, (ROBERT THORSEN, GLENN G. PAXTON, and JOHN M. HASTINGS, of counsel,) for appellant.

EDWARD V. HANRAHAN, State's Attorney, of Chicago, (DANIEL P. COMAN and RONALD BUTLER, Assistant State's Attorneys, of counsel,) for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

After an unsuccessful appeal to the Board of Appeals of Cook County, Trans World Airlines, Inc. (TWA), paid under protest the 1966 property taxes levied upon its leasehold interest in a hangar and hangar site at Chicago-O'Hare International Airport. Its objections to the county collector's application for judgment fixing the correct amount of taxes paid under protest were dismissed by the circuit court of Cook County upon the authority of *People ex rel. Korzen*

v. *American Airlines,* 39 Ill.2d 11. The revenue is involved, and TWA has appealed directly to this court.

To the extent that they are alleged in TWA's amended objection, the facts are substantially identical to those in *American Airlines.* The hangar and the adjacent land covered by the lease are owned by the city of Chicago, and by statute are exempt from taxation. (Ill. Rev. Stat. 1965, ch. 120, pars. 500.9, 500.19, 500.20.) The hangar and the hangar site have been leased to TWA for a term of 40 years. The lease provides for a ground rental of $5,654 per month and an additional rental of $36,588 per month. The obligation to pay the additional rental ceases if revenue bonds issued to construct the airport are retired before the term of the lease expires.

The hangar was constructed by the city of Chicago in 1959 at a cost of $5,000,000. In this case, as in *American Airlines,* the county assessor determined that the term of the lease would exceed the useful life of the hangar building. As in *American Airlines,* the objector does not challenge this factual determination. The assessor valued the hangar building at $1,686,104. He then applied a final "condition" factor of 72% which reflected allowances for depreciation, lessor's reversionary interest and lease restrictions. The resulting amount, $1,213,992, was returned as the assessed value of TWA's leasehold interest.

With respect to the taxation of leasehold estates in tax-exempt property, section 20(2) of the Revenue Act provides: "Each taxable leasehold estate shall be valued at its fair cash value, estimated at the price it would bring at a fair, voluntary sale." (Ill. Rev. Stat. 1965, ch. 120, par. 501(2).) Nowhere in its objections or in its briefs in this court does TWA suggest that its leasehold has been valued in excess of the price it would bring at a fair, voluntary sale.

Neither in this case nor in *American Airlines* was there any attempt to assess the fee. The principal difference between this case and *American Airlines* is that the objections

disposed of in that case are in this one sought to be cast in constitutional terms. The basic position of the objector, repeated in many forms throughout its argument, is thus stated in its amended objection: "A leasehold has a *salable value to the tenant* only when the market or economic rental which can be obtained for the demised premises is in excess of the rental liability of the tenant under the lease." (Italics supplied.) Therefore, the objector says, its "leasehold interest has no value and any assessment thereof is null, void and constructively fraudulent." The difficulty with this position is that what is being taxed is the value of the leasehold, in the sense of the price for which it can be sold, not the value of the leasehold *to the tenant,* in the sense of the profit that the tenant can make upon a sale of the lease. Contrary to the objector's suggestion, the fact that the lessee's net worth was not increased by entering into the lease does not affect the market value of the leasehold estate. The objector's reliance upon *Pollock* v. *Farmers' Loan & Trust Co.* (1895), 157 U.S. 429, 39 L. Ed. 759, and *Bachrach* v. *Nelson* (1932), 349 Ill. 579, is therefore misplaced.

The objector contends that "[t]o value a contract by its benefits, without offsetting the liabilities and burdens can only radically distort the value of the contract." More than a hundred years ago, in *People* v. *Rhodes* (1853), 15 Ill. 304, 306, this court rejected this contention. "A person having property in possession is assessed for its full value, although he may at the time be indebted for it. A man pays as much tax on a farm that is under mortgage as does his neighbor on a farm equally valuable and free from incumbrance. The tax is levied on the land, irrespective of the indebtedness of the owner." See also, *People* v. *Worthington* (1859), 21 Ill. 171; *Paddell* v. *New York* (1908), 211 U.S. 446, 53 L. Ed. 275.

Section 20(2) requires that "each taxable leasehold estate shall be valued at its fair cash value, estimated at the price it would bring at a fair, voluntary sale." Although the

section establishes a mandatory standard, it provides no formula for the determination of the sale price of a leasehold that is not in fact for sale. The assessor must therefore determine what valuation technique he will use.

To determine the fair sale value of TWA's possessory interest, the assessor first determined the full value of the hangar building, and then discounted that value to reflect the reversionary value of the building at the end of the lease, restrictions contained in the lease upon the use of the building, and depreciation. He assigned no value to the land included in the lease. This technique presumes that all, or at least a substantial portion, of the useful life of the building will have expired after 40 years. TWA does not question this assumption, nor does TWA dispute that a competitor would be willing to pay at least $1,213,992 for the possession and use of the hangar site for the remaining term of the lease. In the *American Airlines* case there was testimony by an expert for the airline which made it possible to check the accuracy of the assessor's valuation by using a different method of determining value. In this case there is no such testimony, and no similar check is possible. But the objector has failed to show that the method used resulted in an excessive valuation.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*