**FAIRBANKS NORTH STAR BOROUGH ASSESSOR'S OFFICE, Appellant/ Cross–Appellee,**

v.

**GOLDEN HEART UTILITIES, INC., an Alaskan Corporation, Appellee/Cross– Appellant.**

Nos. S–9120, S–9179.

Supreme Court of Alaska.

Nov. 17, 2000.

John R. Messenger, Preston Gates & Ellis, LLP, Anchorage, for Appellant and Cross–Appellee.

Lance C. Parrish, Parrish Law Office, APC, Fairbanks, for Appellee and Cross–Appellant.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

### OPINION

FABE, Justice.

## I. INTRODUCTION

When the City of Fairbanks sold its sewer and water utility assets to Golden Heart Utilities, Golden Heart entered into a non-exclusive lease of the Fairbanks downtown utilidor system. The Fairbanks North Star Borough Assessor's Office (the assessor) placed the lease on its assessment rolls and assessed the value of Golden Heart's possessory interest at $223,083. Golden Heart objected, complaining that the assessor used an improper method of valuing its lease. The Board of Equalization disagreed, concluding that the value of Golden Heart's possessory interest in exempt property had been established by a valid method. Golden Heart appealed the board's decision to the superior court, and the court invalidated the assessment. The assessor appeals. Because the assessor used a recognized and appropriate method of valuation to assess Golden Heart's possessory interest in tax-exempt property, we reverse.

## II. FACTS AND PROCEEDINGS

In 1997 the City of Fairbanks transferred its sewer and water utilities to a private corporation, Golden Heart Utilities, Inc. In a separate agreement related to the sale, the City granted Golden Heart a non-exclusive lease of the City's downtown utilidor [1] system. The utilidor lease was not exclusive and required Golden Heart to pay up to $20,000 annually for fifty years. The assessor has conceded that this rent was the market rate. The lease, however, does not address the issue of property taxes.

The Fairbanks North Star Borough Assessor added Golden Heart's leasehold interest to the tax rolls as a private possessory interest in publicly owned, non-taxable property and assessed the value of that interest at $223,083. To arrive at that assessment, the assessor's office employed the "reversionary method." The "reversionary method" estimates the value of a leasehold interest by taking the value of the fee interest of the property and deducting both the value of the burden of use restrictions imposed by the City and the value of the City's reversionary interest in the property. In this case, the assessor estimated the fee simple value to be $250,000.[2] It then deducted ten percent of the fee value, or $25,000, to account for the decrease in value resulting from the use restrictions placed on the lease. The assessor

---

1. The "utilidor" contains the pipes and wiring comprising important portions of Fairbanks's public works.

2. The assessor arrived at this figure by capitalizing the annual rent of $20,000 per year at a rate of eight percent.

then estimated the value of the City's reversionary interest at the expiration of the fifty-year lease term at $1,917[3] and deducted that amount from the fee simple value.

| Fee Simple Value: | $250,000 |
|---|---|
| – 10% Use Restriction Deduction: | $ 25,000 |
| – Reversionary Interest: | $ 1,917 |
| Assessed Value: | $223,083 |

Golden Heart appealed the assessment to the Borough's Board of Equalization on the grounds that the assessment was improper, unequal, and excessive. The board held a public hearing on Golden Heart's appeal in June 1998. At the hearing Golden Heart presented testimony that the assessor's valuation method was not recognized by the appraisal profession and was fundamentally wrong. An expert for Golden Heart also testified that the only value attributable to a leasehold interest is the value created when the contract rent is lower than the fair market value rent.

The assessor representative admitted that the "reversionary method" was not an appraisal method recognized by the appraisal profession. But the assessor explained that it used that methodology because it had received materials prepared by the Alaska Department of Community and Regional Affairs, Local Government Assistance Division that described the method. Moreover, experts from both sides acknowledged that we have recognized this methodology in our decision in *North Star Alaska Housing Corp. v. Fairbanks North Star Borough Board of Equalization*[4] for determining the value of a possessory interest in tax-exempt property. The board found that "[t]he Assessor's possessory interest valuation methodology is val-

id for determining the taxable value of a private leasehold interest in public, non-taxable property" and upheld the assessment.

Golden Heart appealed the board's decision to the superior court, arguing that the board erred in upholding the assessor's use of the reversionary method. Golden Heart asserted that the reversionary method was fundamentally wrong, and that the assessor had inappropriately shifted "value attributable to the City's tax exempt ownership interest to [Golden Heart's] taxable leasehold interest in an attempt to gain tax revenue" in violation of the law. Instead Golden Heart contends that it should be taxed according to the value it would obtain from selling the lease agreement on the open market, called the "rent-savings method."[5] The assessor argued in response that the Alaska Constitution authorizes local governments to tax leaseholds on government property and grants the discretion to choose any recognized method of valuation. The superior court ruled in favor of Golden Heart, concluding that the assessor's valuation method was fundamentally wrong. The assessor appeals.

## III. STANDARD OF REVIEW

This case involves a challenge to the merits of an administrative decision. We independently review the merits of such a decision, giving no deference to the superior court's decision.[6] In reviewing the same issue presented in this case, whether the "reversionary method" was an appropriate valuation technique, we applied the reasonable

---

3. The assessor arrived at the value of the reversionary interest by starting with the fair market value and deducting the value of the use restrictions, a figure called the "value less restrictions." The assessor determined the value of the reversion by figuring out the present value of the "value less restrictions" at the end of the 50 year term. The assessor estimated the present value by taking the product of the "value less restrictions" and the present value factor found on a compound interest table that assumed an interest rate of 10%. ($250,000–$25,000) × (.008519) = $1,917

4. 778 P.2d 1140, 1143–45 (Alaska 1989).

5. The assessor refers to this method as the "rent-savings method," but Golden Heart has avoided using that term because this court has explicitly upheld a municipality's decision to value a lease of tax-exempt property by the "reversionary method" instead of the "rent-savings method." *See North Star Alaska Hous.,* 778 P.2d at 1143–45. Because Golden Heart's advocated method so closely resembles the "rent-savings method" we refer to it as such. "The rent savings method arrives at a value based upon the market rental value of the leasehold minus the amount of rent actually paid by the lessee." *Id.* at 1143.

6. *See Robles v. Providence Hosp.,* 988 P.2d 592, 596 (Alaska 1999).

basis standard of review.[7] This standard is appropriate "[w]here an agency decision as to questions of fact and law involves agency expertise."[8] Provided that the assessor has a reasonable basis for a valuation method, that method will be allowed "so long as there was no fraud or clear adoption of a fundamentally wrong principle of valuation."[9]

## IV. DISCUSSION

The Alaska Constitution allows private interests in land owned by the government to be taxed.[10] Accordingly, "a private leasehold, contract, or other interest in the [tax exempt municipal] property is taxable to the extent of the interest."[11] The parties in this case dispute how to value private interests in tax exempt property.

### A. The Alaska Constitution Does Not Mandate the Use of Any Specific Valuation Method.

Golden Heart asserts that Alaska's constitution and statutes compel local governments to employ appraisal methods that are "recognized by the appraisal community" and that ascertain the property's "full and true value." To support this contention, Golden Heart argues that the authority cited in the case approving the assessor's valuation method, *North Star Alaska Housing*,[12] is based on Alaska's pre-statehood taxing scheme. The pre-statehood scheme allowed local taxing authorities to set "the mode and manner of assessment."[13] Golden Heart contends that Alaska's constitution and statutes altered that scheme. Article IX, section 3 of the Alaska Constitution states: "Standards for appraisal of all property assessed by the State or its political subdivisions shall be prescribed by law." And the legislature sub-

sequently mandated the following standards for appraisal:

> The assessor shall assess property at its full and true value.... The full and true value is the estimated price that the property would bring in an open market and under the then prevailing market conditions in a sale between a willing seller and a willing buyer both conversant with the property.... [14]

According to Golden Heart, the word "assessment" was struck from a prior draft of article 9, section 3 of the Alaska Constitution and replaced with "appraisal." Golden Heart argues that local assessors therefore do not have authority to adopt "separate unpublished 'assessment' standards." Golden Heart asserts that this argument has two implications. First, it maintains that because the constitution mandates that the legislature prescribe valuation standards, a deferential standard of review is unwarranted. Second, it contends that when the legislature adopted the "full and true value" standard in AS 29.45.110, it prescribed that assessors use a valuation method recognized by the appraisal profession.

### 1. A deferential standard of review is appropriate.

Golden Heart argues that because the legislature prescribes the method of valuation, applying a deferential standard of review to the valuation method chosen by the Board of Equalization is inappropriate. We disagree. The Alaska Constitution empowered the legislature to prescribe valuation standards.[15] The legislature chose to define those standards broadly, requiring that property be assessed "at its full and true val-

---

7. *See North Star Alaska Hous.*, 778 P.2d at 1144 n. 7.

8. *Id.* (internal punctuation and citation omitted).

9. *Hoblit v. Greater Anchorage Area Borough*, 473 P.2d 630, 632 (Alaska 1970) (quoting *Twentieth Century Inv. Co. v. City of Juneau*, 359 P.2d 783, 788 (Alaska 1961)) (internal punctuation omitted).

10. Alaska Const. art. IX, § 5 ("Private leaseholds, contracts, or interests in land or property owned or held by the United States, the State, or

its political subdivisions, shall be taxable to the extent of the interests.").

11. AS 29.45.030(a)(1)(A).

12. 778 P.2d at 1143–45.

13. *Twentieth Century Inv. Co.*, 359 P.2d at 788 n. 13 (internal quotation omitted).

14. AS 29.45.110(a).

15. *See* Alaska Const. art. IX, § 3.

ue."[16] Accordingly, the precise method for determining the "full and true value" of property is within the assessor's discretion. We recognized that discretion when we applied the reasonable basis standard of review in *North Star Alaska Housing*[17] and again in *Cool Homes, Inc. v. Fairbanks North Star Borough.*[18]

Although Golden Heart correctly points out that some of the authority cited in *North Star Alaska Housing* is based on the prestatehood tax scheme, that fact does not diminish the precedential value of our prior application of the deferential standard in light of the legislature's broad direction that property be assessed "at its full and true value."[19]

### 2. Recognized appraisal standards are not mandated by law.

Throughout its brief, Golden Heart contends that the reversionary method is not a recognized appraisal method. Even accepting this argument as true, we conclude that it lacks legal significance. The Alaska Constitution requires that the law prescribe appraisal standards,[20] and the implementing law mandates that property be assessed "at its full and true value," in other words, "the estimated price that the property would bring in an open market."[21] The relevant inquiry is whether or not a valuation method selected by the assessor provides some reasonable estimate of the market value of the interest to be taxed,[22] not whether the appraisal method has received the imprimatur of acceptance from the appraisal community. If the assessor has a reasonable basis for the valuation method, we will approve that method "so long as there was no fraud or clear adoption of a fundamentally wrong principle

of valuation."[23] The central question in this case is whether the appraisal method employed by the assessor resulted in an unreasonable valuation.

### B. Governments May Tax the Value of the Possessory Interest in the Leased Property.

Golden Heart argues that because it pays market rent on the utilidor property, if it were to assign its interest to an informed buyer the assignee would not be willing to pay anything for the interest because the lease terms reflect the market price. Accordingly, Golden Heart believes that the assessed value should be zero.

The assessor, however, does not argue that the reversionary method accurately values the utilidor lease contract. Instead, the assessor argues that the assessment reflects the value that Golden Heart derives from its ability to use the utilidor property in its operations—its possessory interest. Even if Golden Heart cannot sell its lease contract for any significant sum, the assessor seeks to tax the benefit Golden Heart derives from its right to use the utilidor.[24] This use of the property must have some value, or Golden Heart would not agree that $20,000 in annual rent is fair market value.

It was appropriate for the assessor to assess Golden Heart's possessory interest. Although our approval of the taxing of a possessory interest in tax-exempt property is not explicit in our decisions in *North Star Alaska Housing*[25] and *Cool Homes*,[26] we implicitly approved of the practice. First, we approved the use of the reversionary method, which begins with the fee value of a property in an attempt to discern the market value of

16. AS 29.45.110(a).

17. 778 P.2d at 1144 n. 7.

18. 860 P.2d 1248, 1262–66 (Alaska 1993).

19. AS 29.45.110(a).

20. *See* Alaska Const. art. IX, § 3.

21. AS 29.45.110(a).

22. *See North Star Alaska Hous.*, 778 P.2d at 1144 n. 7.

23. *Hoblit v. Greater Anchorage Area Borough*, 473 P.2d 630, 632 (Alaska 1970) (quoting *Twentieth Century Inv. Co. v. City of Juneau*, 359 P.2d 783, 788 (Alaska 1961)) (internal punctuation omitted).

24. *See Pier 67, Inc. v. King County*, 78 Wash.2d 48, 469 P.2d 902, 907 (1970).

25. 778 P.2d at 1143–45.

26. 860 P.2d at 1263–64.

a lease.[27] Second, we concluded that the assessments in those cases were valid because the interests to be taxed shared "attributes of a fee interest" in that the leases were long term.[28] Even though Golden Heart pays rent, the longevity of the agreement makes Golden Heart's interest analogous to a fee interest. Moreover, the reversionary method accounts for the differences between a leasehold interest and a fee interest in the utilidor by deducting value to reflect the restrictions on the lease and the fact that the property will eventually revert back to the City.

■ In several other states, local governments are permitted to tax a private party's possessory interest in tax-exempt property.[29] We agree with the assessor and conclude that "[t]he value to be taxed is the value of the right to use the property over the period of the lease." [30] We join these other states in allowing municipal governments to assess the possessory interest in tax-exempt property. "[W]hat is being taxed is the value of the leasehold, in the sense of the price for which it can be sold, not the value of the leasehold *to the tenant*, in the sense of the profit that the tenant can make upon a sale of the lease." [31]

■ Golden Heart argues that the Alaska Constitution specifically requires the assessor to assess the market value of its lease contract rather than the value of its possessory interest. Article IX, section 5 of the Alaska Constitution states that "[p]rivate *leaseholds*, contracts, or interests in [tax-exempt] land or property . . . shall be taxable to the extent of the interests." (Emphasis added.) Golden Heart argues that because the constitution specifically refers to a "leasehold," the assessor cannot tax its "possessory interest." But the term "leasehold" is not exclusive of the term "possessory interest." A "leasehold" is a "tenant's possessory estate in land or premises." [32] Golden Heart provides no additional legal authority for its proposed distinction.

Moreover, the constitution appears to contemplate the taxation of more than leaseholds in tax-exempt property. The constitutional provision includes the more inclusive term "interests" in enumerating what a municipality may assess.[33] We therefore reject Golden Heart's argument that by allowing a "leasehold" to be taxed, the Alaska Constitution excluded the possibility that a municipality could tax a "possessory interest" in a lease.

### C. The Reversionary Method Is an Appropriate Valuation Method.

■ We have twice upheld the application of the reversionary method of valuation used in this case.[34] In *North Star Alaska Housing*, we reviewed an assessment of property in which the federal government leased land at no cost to a housing develop-

---

**27.** See North Star Alaska Hous., 778 P.2d at 1143–45; Cool Homes, 860 P.2d at 1263–64.

**28.** North Star Alaska Hous., 778 P.2d at 1145; see Cool Homes, 860 P.2d at 1263–64.

**29.** See De Luz Homes v. County of San Diego, 45 Cal.2d 546, 290 P.2d 544, 554–58 (1955); Texas Co. v. County of Los Angeles, 52 Cal.2d 55, 338 P.2d 440, 444 (1959); People ex rel. Korzen v. American Airlines, Inc., 39 Ill.2d 11, 233 N.E.2d 568, 572 (1967); People ex rel. Kucharski v. Trans World Airlines, Inc., 43 Ill.2d 174, 251 N.E.2d 225, 226–27 (1969); Portland Gen. Elec. Co. v. State Tax Comm'n, 249 Or. 239, 437 P.2d 827, 833 (1968); Shaia v. City of Richmond, 207 Va. 885, 153 S.E.2d 257, 261 (1967); Pier 67, 469 P.2d at 907.

**30.** Pier 67, 469 P.2d at 907.

**31.** Trans World Airlines, Inc., 251 N.E.2d at 226.

**32.** Black's Law Dictionary 900 (7th ed.1999); but see Black's Law Dictionary 900 (defining a "leasehold interest," for the purposes of eminent domain, as "the lessee's interest in the lease itself, measured by the difference between the total remaining rent and the rent the lessee would pay for similar space for the same period"); see also Totemoff v. State, 905 P.2d 954, 966 (Alaska 1995); Dannemiller v. AMFAC Distrib. Corp., 566 P.2d 645, 653 n. 10 (Alaska 1977).

**33.** Alaska Const. art IX, § 5.

**34.** See Cool Homes, Inc. v. Fairbanks N. Star Borough, 860 P.2d 1248, 1262–66 (Alaska 1993); North Star Alaska Hous. Corp. v. Fairbanks N. Star Borough Bd. of Equalization, 778 P.2d 1140, 1143–45 (Alaska 1989).

er.[35] The developer then built houses on the land and leased them back to the federal government.[36] When Fairbanks assessed the property, the developer challenged the assessment.[37] We affirmed the assessment and the valuation method.[38]

The valuation method approved in *North Star Alaska Housing* was the same one employed in the instant case.[39] As in this case, the developer argued that the leasehold should be assessed according to the value the leaseholder would receive if it sold its interest on the open market, and the value of the interest would be zero.[40] But we rejected that argument and concluded that it was appropriate to value the leasehold "based on the land's market value, as if it were owned by [the leaseholder], minus an adjustment based on the fact that [the leaseholder's] interest in land is only for a [fixed] term...."[41] We again approved of this valuation method in our decision in *Cool Homes, Inc. v. Fairbanks North Star Borough.*[42]

Golden Heart, however, believes that the decisions in *North Star Alaska Housing* and *Cool Homes* are distinguishable from the instant case. In those cases, the lessees either paid no rent or nominal rent for their leases.[43] Under those circumstances both the reversionary method and the rent savings method would yield approximately equal valuations. According to the rent savings method, one would assess the lease at the market value of the lease, which is the market value of the possessory interest, less the rent actually paid.[44] If the lessee pays no rent, the market value of the lease contract is the same as the assessed value of the possessory interest. The reversionary method starts with "the fee simple value, discounted by a factor representing the fact that the property will revert to the owner in the future,"[45] a figure approximately equal to the market value of the possessory interest in the property.

But when the lessee pays rent, the value assessed by the "rent savings method" goes down, and the value assessed by the "reversionary method" stays the same.[46] Golden Heart argues that this result is untenable because there can only be one measure of market value. But this argument begs the question. The issue is *which interest* the assessor is valuing. We have already concluded that Fairbanks may assess the possessory interest. Therefore, it is not anomalous that the market value of the lease is different from the market value of the possessory interest; the valuations are measures of two completely different interests.[47]

Moreover, many states have adopted the rule that when governments tax a lessee's possessory interest in otherwise exempt property, they should value the interest without regard for the amount of contract rent.[48]

---

**35.** 778 P.2d at 1141.

**36.** *See id.* at 1141–42.

**37.** *See id.* at 1142.

**38.** *See id.* at 1145.

**39.** *See id.* at 1143–45.

**40.** *See id.* at 1143, 1144.

**41.** *Id.* at 1144.

**42.** 860 P.2d at 1262–66.

**43.** *See North Star Alaska Hous.*, 778 P.2d at 1145; *Cool Homes*, 860 P.2d at 1252.

**44.** *See id.; see also People ex rel. Kucharski v. Trans World Airlines, Inc.*, 43 Ill.2d 174, 251 N.E.2d 225, 226 (1969).

**45.** *North Star Alaska Hous.*, 778 P.2d at 1143.

**46.** *Rent Savings Method*

Possessory Int. Value–Rent Paid = Lease Market Value
 *Reversionary Method*
Fee Simple Value–Reversionary Int. Value = Possessory Int. Value
Therefore, when "Rent Paid" is equal to zero, the market value of the lease would equal the value of the possessory interest.

**47.** The superior court believed that Golden Heart's payment of rent distinguished this case from our decision in *North Star Alaska Housing* and *Cool Homes*. But the payment of rent does not affect the value of Golden Heart's possessory interest.

**48.** *See Texas Co. v. County of Los Angeles*, 52 Cal.2d 55, 338 P.2d 440, 444 (Cal.1959); *De Luz Homes v. County of San Diego*, 45 Cal.2d 546, 290 P.2d 544, 554–58 (1955); *People ex rel. Kucharski v. Trans World Airlines, Inc.*, 43 Ill.2d 174, 251 N.E.2d 225, 226–27 (1969); *People ex rel.*

Many of these courts distinguish between the lessee's equity in the lease and the value of the lessee's right to use the property.[49] Although the valuation methods vary,[50] these states seek to ascertain the value of the right to possess the property for the contract term, without regard for the contract price,[51] just as the assessor has done here.

The California Supreme Court has explained why the assessment of leases of tax-exempt property requires valuation methods different from the assessment of private property that is subject to a lease. In *De Luz Homes v. County of San Diego*, Justice Traynor explained that in a normal lease, no distinction is made between the possessor and the individual holding the reversionary interest when values are assessed.[52] Instead, the reversioner and possessor sort out the tax liability in a private arrangement.[53] Inquiring into the value of the possessory and reversionary interest is important, however, when the reversionary interest is tax exempt.[54] Because the reversion is not taxed, some method of valuing the tenant's possessory interest must be employed to account for the value of the reversion.[55]

Golden Heart argues that the extra-jurisdictional authority is not persuasive. Instead, Golden Heart directs us to *Great Northern Railway Co. v. Weeks*.[56] Golden Heart asserts that *Weeks* stands for the proposition that the assessor must use "the same valuation standard for tax and condemnation cases," quoting the following language:

> The principles governing the ascertainment of value for the purposes of taxation are the same as those that control in condemnation cases, confiscation cases, and generally in controversies involving the ascertainment of just compensation.[57]

But other courts have distinguished *Weeks* and held that different valuation methods for condemnation and taxation purposes may be employed.[58] And the Supreme Court has expressly limited the precedential value of *Weeks*, confining its holding to the specific facts.[59]

Contrary to Golden Heart's contention, there are good reasons for employing different methods of valuation for condemnation and taxation purposes. In a condemnation, the interest holder loses its possessory interest. As Justice Traynor explained:

> In eminent domain the full value of the interest must be paid for, but since the taking discharges the obligation to pay future rent, the value of that obligation to the lessor must be awarded to him. Although the lessee is awarded damages equal only to the value of his equity, he receives the full value of his possessory

---

*Korzen v. American Airlines, Inc.*, 39 Ill.2d 11, 233 N.E.2d 568, 572 (1967); *Portland Gen. Elec. Co. v. State Tax Comm'n*, 249 Or. 239, 437 P.2d 827, 833 (1968); *Shaia v. City of Richmond*, 207 Va. 885, 153 S.E.2d 257, 261 (1967); *Pier 67, Inc. v. King County*, 78 Wash.2d 48, 469 P.2d 902, 907 (1970).

**49.** *See Trans World Airlines*, 251 N.E.2d at 226; *Portland Gen. Elec.*, 437 P.2d at 833; *Shaia*, 153 S.E.2d at 264; *Pier 67*, 469 P.2d at 907.

**50.** *Compare De Luz Homes*, 290 P.2d at 557–58, with *Shaia*, 153 S.E.2d at 262.

**51.** *See De Luz Homes*, 290 P.2d at 557–58; *Texas Co.*, 338 P.2d at 444; *American Airlines*, 233 N.E.2d at 572; *Trans World Airlines*, 251 N.E.2d at 226; *Portland Gen. Elec.*, 437 P.2d at 833; *Shaia*, 153 S.E.2d at 264; *Pier 67*, 469 P.2d at 907.

**52.** 290 P.2d at 554–55.

**53.** *See id.* at 555.

**54.** *See id.*

**55.** *See id.*

**56.** 297 U.S. 135, 56 S.Ct. 426, 80 L.Ed. 532 (1936). In *Weeks*, the Supreme Court overturned a state's valuation of a railway system because the valuation method factored in value attributable to the entire rail system, even portions of the system located outside the state. *See id.* at 142–44, 56 S.Ct. 426.

**57.** 297 U.S. at 139, 56 S.Ct. 426.

**58.** *See, e.g., Great N. Nekoosa Corp. v. United States*, 544 F.Supp. 511, 514–15 (D.Me.1982).

**59.** *See Nashville, C. & St. L. Ry. v. Browning*, 310 U.S. 362, 371, 60 S.Ct. 968, 84 L.Ed. 1254 (1940) ("Plainly, therefore, [*Weeks*] must have rested upon considerations peculiar to its own facts.").

interest, for his obligation to pay rent is discharged.[60]

In a taxation case, the assessor is attempting to ascertain the value of the possessory interest without regard for the obligation to pay rent because the assessment does not extinguish the lessee's obligation to pay that rent. Accordingly, the value of the reversionary interest is deducted from the fee simple value of the property less the decrease in value caused by the lease restrictions.

■ We conclude that the reversionary method is a valid method for valuation of a possessory interest in tax-exempt property. Both the assessor and Golden Heart agree that the rate of $20,000 per year is fair market rent. And neither the assessor's use of the eight percent capitalization rate to value the fee interest at $250,000 [61] nor the assessor's estimate that the use restrictions deplete the market value of the lease by ten percent has been challenged.

■ Golden Heart does, however, point to an error in the assessor's valuation. Golden Heart argues that when calculating the reversionary interest, the assessor improperly calculated the value of the reversion using the $225,000 value, reached by deducting ten percent of the fee simple value of $250,000 from the fee value to account for the use restrictions. Golden Heart contends that this deduction is inappropriate because when the property reverts to Fairbanks it will not contain the lease's restrictions. We agree. Once the lease term expires, the utilidor will revert back to Fairbanks, but because Fairbanks is the fee owner, it will not be subject to use restrictions. Factoring the use restrictions into the valuation of Fairbanks's reversion is therefore inappropriate.

Assessor's Reversion Estimate = (fee value-(.1) fee value) × (present value factor)

The present value factor for a lease expiring in fifty years, assuming 10% annual compound interest, is .008519.

Assessor's Reversion Estimate = (250,000–25,000) × (.008519) = $1,917

Recalculated Reversion Estimate = (250,000–0) (.008519) = $2,130

Accordingly, the new assessed value should be the fee value ($250,000) less the amount accounting for the use restrictions ($25,000) less the recalculated value of the reversionary interest ($2,130),[62] equalling $222,870.

**D.** *The Assessor's Valuation Did Not Violate Equal Protection.*

■ Golden Heart argues that the assessor's valuation of its possessory interest denied it equal protection. Golden Heart asserts that "[t]he Assessor chooses between two valuation standards based solely on the exemption status of the holders of the interest.... It is impermissible to change valuation standards based on the tax status of the holders of an interest." It is perfectly acceptable, however, to use different valuation standards for exempt and non-exempt property. The Alaska Constitution expressly calls for property owned by the state or its political subdivisions to be tax exempt,[63] and expressly allows privately held interests in exempt lands to be taxed.[64] Golden Heart argues that the assessor has denied it equal protection because it does not tax all leases. But this argument mischaracterizes Fairbanks's assessing procedures.

The Board of Equalization found that "private property is taxable to the fee owner

---

**60.** *Texas Co.,* 338 P.2d at 444.

**61.** The assessor arrived at the $250,000 valuation of the fee interest by dividing the annual rent of $20,000 by a capitalization rate of eight percent. 20,000 ÷ .08 = $250,000

**62.** Although the disparity between the two valuations may seem *de minimis,* that disparity will widen as the expiration of the lease term draws closer. The present value factor that Fairbanks uses to calculate the present value of the reversion will increase every year. For example, when the lease term was to expire in 50 years,

the factor was .008519. According to the same table that factor should be .022095 when the expiration is 40 years away, .148644 when it is 20 years away, .385543 when it is 10 years away, .620921 when it is 5 years away, and .909091 when it is 1 year away. The reversion gets more valuable as eventual transfer back to Fairbanks becomes imminent. The valuation of Golden Heart's possessory interest in future years should reflect this phenomenon.

**63.** Alaska Const. art. IX, § 4.

**64.** Alaska Const. art. IX, § 5.

based on the full fee value of the property ." The tax obligation of a lessee of private property manifests itself in the form of rent paid to the fee holder—the lessor—who is responsible for the property tax. In cases such as these where a private party leases property from the government, the fee holder is tax exempt. Because the assessor cannot assess the tax-exempt fee holder, it assesses the interest held by the private lessee "to the extent of the interest" [65] and calculates the value of that possessory interest.[66] As the California Supreme Court explained:

In practice, assessors usually enter the entire value of land and improvements on the tax roll without distinction between possessory and reversionary interests.... As between reversioners and possessors payment of the tax is a private arrangement. When, however, the possessory interest is taxable and the reversion is exempt, only the possessory interest is subject to assessment and taxation.[67]

Far from being an equal protection violation, this practice actually levels the field between lessees of private property and those with leases from a tax-exempt entity.[68]

■ Golden Heart makes a second argument that it has been treated differently than other holders of tax-exempt property. Golden Heart points out that leasehold interests for floatplane slips at the airport are not taxed. At the hearing the assessor explained that it did not tax these leases because the value was so low that the cost of doing so would exceed the tax revenue generated. Golden Heart argues that this practice either violates equal protection or is arbitrary and capricious because the assessor lacks standards for determining when the value of the interest was too low to tax.

■ Both the United States and Alaska Constitution guarantee people equal protection under the law.[69] "These clauses, however, require 'equal treatment only for those who are similarly situated.' " [70] And Golden Heart has not demonstrated that it has been treated differently from similarly situated parties. Our cases point out that the City of Fairbanks has a decades-old policy of taxing possessory interests in tax-exempt property.[71] There are several leases of tax-exempt land in the Fairbanks area which the City has assessed, including the airport and the properties in *North Star Alaska Housing* and *Cool Homes.*

Golden Heart claims, however, that the assessor has violated its equal protection rights by failing to tax leases of floatplane slips at the airport. But these interests are not similarly situated to the Golden Heart's utilidor lease. The assessor stated that its reason for not assessing the floatplane leases was their low value in relation to the cost of collection of the tax. And Golden Heart has failed to demonstrate why this was an unjustifiable or arbitrary classification.

To demonstrate that the board acted arbitrarily or capriciously, Golden Heart would have to show that the City of Fairbanks had "no principled basis for distinguishing between" [72] the floatplane slip leases and the utilidor lease. The testimony at the hearing noted that the valuation of the floatplane leases was well below that of the utilidor lease.[73] The record contains no more infor-

65. AS 29.45.030(a)(1)(A).

66. *See North Star Alaska Hous.*, 778 P.2d at 1145.

67. *De Luz Homes v. County of San Diego*, 45 Cal.2d 546, 290 P.2d 544, 555 (1955) (citations omitted).

68. *See Trimble v. City of Seattle*, 231 U.S. 683, 689–90, 34 S.Ct. 218, 58 L.Ed. 435 (1914) ("If these leaseholds are not taxable, they are a favored class of property; for ordinarily leaseholds are taxed even if they are lumped and included in the value of the fee.").

69. *See* U.S. Const. amend. XIV, § 2; Alaska Const. art. I, § 2.

70. *Rutter v. State*, 963 P.2d 1007, 1013 (Alaska 1998) (quoting *Shepherd v. State, Dep't of Fish & Game*, 897 P.2d 33, 44 (Alaska 1995)).

71. *See North Star Alaska Hous.*, 778 P.2d at 1145; *Cool Homes, Inc. v. Fairbanks N. Star Borough*, 860 P.2d 1248, 1262–66 (Alaska 1993).

72. *Noey v. Dep't of Envtl. Conservation*, 737 P.2d 796, 806 (Alaska 1987).

73. No valuations were provided at the hearing, but Golden Heart's counsel did mention that the rent on a floatplane slip was $360 per year, well below the $20,000 annual rental rate of the utilidor. If the $360 figure was close to the market

mation about the values of the floatplane slip leases, but it does demonstrate that valuable leases at the airport are taxed. Given the record, we see no basis to overturn the board's finding that Golden Heart has not been singled out for unequal treatment.

### E. *Golden Heart Was Not Denied Due Process.*

 Golden Heart complains of alleged improprieties during the hearing process, which it argues amount to a violation of due process. The claims of error [74] include the assessor's alleged failure to give reasonable notice of its position and the board's refusal to allow Golden Heart to call adverse witnesses during the presentation of its case.

 Golden Heart argues that it did not have adequate notice of the assessor's position. The assessor provided its position memorandum to Golden Heart on the Friday before the Monday hearing. Although this notice complied with Fairbanks North Star Borough Ordinance 3.24.001(D),[75] Golden Heart argues that this notice was insufficient. Golden Heart claims it was prejudiced because it could not prepare extensively to respond to the assessor's case. But the transcript indicates that Golden Heart adequately understood the assessor's position at the hearing. Because "[t]he crux of due process is opportunity to be heard and the right to adequately represent one's interests,"[76] the board did not deny Golden Heart due process.

 Golden Heart also wanted to call the assessor as part of its case in chief. Golden Heart argued that because it did not have an adequate opportunity to learn the position of the assessor prior to the hearing, the assessor should have been required to testify first so that Golden Heart's expert could respond. The board denied this request. Instead it granted Golden Heart "wide latitude" in presenting rebuttal evidence.

> [Golden Heart] will be allowed wide latitude in [its] rebuttal case to present [its] expert testimony that would rely on any of the evidence that is brought forth during either the direct or cross examination of the assessors, which will enable [Golden Heart] to have all of the evidence in the record that [it wishes] to put in. At the same time, we'll retain the order that the Board is used to and feels comfortable with, but [Golden Heart] will not be precluded from the presentation of any of [its] evidence.

 By allowing Golden Heart the option of delaying its expert testimony until after the assessor had presented its case, the board afforded Golden Heart the opportunity to cure the problem about which it now complains. Generally, administrative bodies have discretion with regard to the order of proof and the presentation of evidence.[77] Moreover, the Wisconsin Supreme Court has confronted an identical argument and concluded that there was no due process violation.[78] In *State ex rel. Gregersen v. Board of Review*, the Board of Review did not allow the taxpayer to call the assessor in his case in chief.[79] The Wisconsin Supreme Court affirmed the assessment, concluding that

---

rent, the assessed value of the floatplane slips would be orders of magnitude lower than the valuation of the utilidor, assuming the same eight percent capitalization rate used to value the utilidor.

74. Golden Heart makes eight claims of error in all, but we do not consider all of them because they were not briefed sufficiently for us to consider them on appeal. *See Adamson v. University of Alaska*, 819 P.2d 886, 889 n. 3 (Alaska 1991) ("where a point is given only a cursory statement in the argument portion of a brief, the point will not be considered on appeal").

75. FNSBCO 3.24.001(D) requires that information regarding the assessor's position be made available one working day before the hearing.

76. *Matanuska Maid, Inc. v. State*, 620 P.2d 182, 192 (Alaska 1980).

77. *Cf. Stein v. Kelso*, 846 P.2d 123, 126 (Alaska 1993) (Department of Environmental Conservation hearing officer's evidentiary ruling reviewed for an abuse of discretion).

78. *See State ex rel. Gregersen v. Board of Review of Town of Lincoln*, 5 Wis.2d 28, 92 N.W.2d 236 (1958).

79. *Id.* at 237–38.

there was no denial of the taxpayer's right to cross-examine, just a postponement.[80] Because Golden Heart was permitted to rebut the assessor's testimony, the board's decision did not constitute a due process violation.

## V. CONCLUSION

Because Alaska's constitution, statutes, and case law authorize local governments to tax a possessory interest in tax-exempt public property, the assessor's valuation was not fundamentally wrong. But because the assessor inappropriately considered the impact of the use restrictions when it valued the City's reversionary interest, the 1998 assessment should be modified from $223,087 to $222,870.